## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ANDERSON HOSPITAL
6800 State Route 162
Maryville, IL  62062
140289

ASCENSION ALL SAINTS HOSPITAL, INC.
3801 Spring Street
Racine, WI  53405
520096

ASCENSION BORGESS HOSPITAL
1521 Gull Road
Kalamazoo, MI  49048
230117

ASCENSION GENESYS HOSPITAL
1 Genesys Parkway
Grand Blanc, MI  48439
230197

ASCENSION MACOMB OAKLAND HOSPITAL
11800 East 12 Mile Road
Warren, MI  48093
230195

ASCENSION NE WISCONSIN, INC. d/b/a
ASCENSION NE WISCONSIN-ST ELIZABETH
CAMPUS
1506 South Oneida Street
Appleton, WI  54915
520009

ASCENSION PROVIDENCE HOSPITAL,
SOUTHFIELD AND NOVI
16001 West 9 Mile Road
Southfield, MI  48075
230019

ASCENSION ST THOMAS MIDTOWN HOSPITAL
2000 Church Street
Nashville, TN  37236
440133

CIVIL NO. _____

**COMPLAINT**
**FOR JUDICIAL REVIEW,**
**DECLARATORY JUDGMENT,**
**AND MANDAMUS RELIEF**

ASCENSION SE WISCONSIN HOSPITAL, INC. d/b/a
ASCENSION SE WISCONSIN HOSPITAL-ST
JOSEPH CAMPUS
5000 West Chambers Street
Milwaukee, WI  53210
520136

ASCENSION SETON d/b/a ASCENSION SETON
MEDICAL CENTER AUSTIN
1201 West 38th Street
Austin, TX  78705
450056

ASCENSION SETON d/b/a DELL SETON MEDICAL
CENTER AT THE UNIVERSITY OF TEXAS
1500 Red River Street
Austin, TX  78701
450124

ASCENSION ST FRANCIS HOSPITAL, INC.
3237 South 16th Street
Milwaukee, WI  53215
520078

ASCENSION ST. JOHN HOSPITAL
22101 Moross Road
Detroit, MI  48236
230165

ASCENSION ST. MARY'S HOSPITAL
800 South Washington Avenue
Saginaw, MI  48601
230077

ASPIRUS STEVENS POINT HOSPITAL & CLINICS,
INC.
900 Illinois Avenue
Stevens Point, WI  54481
520002

BOARD OF TRUSTEES OF THE UNIVERSITY OF
ILLINOIS d/b/A UNIVERSITY OF ILLINOIS
HOSPITAL AND CLINICS
1740 West Taylor Street
Chicago, IL  60612
140150

2

BRYAN MEDICAL CENTER
1600 South 48th Street
Lincoln, NE  68506
280003

CALDWELL MEMORIAL HOSPITAL, INC.
321 Mulberry Street, Southwest
Lenoir, NC  28645
340041

CITY OF WOOSTER d/b/a WOOSTER
COMMUNITY HOSPITAL
1761 Beall Avenue
Wooster, OH  44691
360036

COLUMBIA ST. MARY'S HOSPITAL
MILWAUKEE, INC. d/b/a ASCENSION COLUMBIA
ST MARY'S HOSPITAL MILWAUKEE CAMPUS
2301 North Lake Drive
Milwaukee, WI  53211
520051

COMMUNITY HEALTH NETWORK, INC. d/b/a
COMMUNITY HOSPITAL EAST
1500 North Ritter Avenue
Indianapolis, IN  46219
150074

COMMUNITY HEALTH NETWORK, INC. d/b/a
COMMUNITY HOSPITAL NORTH
7150 Clearvista Drive
Indianapolis, IN  46256
150169

COMMUNITY HOSPITAL OF ANDERSON &
MADISON COUNTY, INC. d/b/a COMMUNITY
HOSPITAL ANDERSON
1515 North Madison Avenue
Anderson, IN  46011
150113

COMMUNITY HOSPITAL SOUTH, INC.
1402 East County Line Road
Indianapolis, IN  46227
150128

4929-4851-2812v2

COMMUNITY HOWARD REGIONAL HEALTH,
INC.
3500 South Lafountain Street
Kokomo, IN  46902
150007

DALLAS COUNTY HOSPITAL DISTRICT d/b/a
PARKLAND HEALTH
5200 Harry Hines Boulevard
Dallas, TX  75235
450015

EAST ALABAMA HEALTH CARE AUTHORITY
d/b/a EAST ALABAMA MEDICAL CENTER
2000 Pepperell Parkway
Opelika, AL  36801
010029

ELKHART GENERAL HOSPITAL, INC.
600 East Boulevard
Elkhart, IN  46514
150018

ENDEAVOR HEALTH CLINICAL OPERATIONS
d/b/a EVANSTON HOSPITAL
2650 Ridge Avenue
Evanston, IL  60201
140010

FLUSHING HOSPITAL & MEDICAL CENTER
4500 Parsons Boulevard
Flushing, NY  11355
330193

FRANCISCAN HEALTH CROWN POINT
12750 Saint Francis Drive
Crown Point, IN  46307
150126

FRANCISCAN HEALTH DYER & HAMMOND d/b/a
FRANCISCAN HEALTH HAMMOND
5454 Hohman Avenue
Hammond, IN  46320
150004

4929-4851-2812v2

FRANCISCAN HEALTH INDIANAPOLIS &
MOORESVILLE d/b/a FRANCISCAN HEALTH –
INDIANAPOLIS
8111 South Emerson Avenue
Indianapolis, IN  46237
150162

FRANCISCAN HEALTH MICHIGAN CITY
3500 Franciscan Way
Michigan City, IN  46360
150015

FRANCISCAN HEALTH OLYMPIA FIELDS
20201 South Crawford Avenue
Olympia Fields, IL  60461
140172

FROEDTERT MEMORIAL LUTHERAN HOSPITAL,
INC.
9200 West Wisconsin Avenue
Milwaukee, WI  53226
520177

GOOD SAMARITAN HOSPITAL
520 South Seventh Street
Vincennes, IN  47591
150042

HEALTH AND HOSPITAL CORPORATION OF
MARION COUNTY d/b/a ESKENAZI HEALTH
720 Eskenazi Avenue
Indianapolis, IN  46202
150024

HEALTH CARE AUTHORITY OF THE CITY OF
ANNISTON d/b/a NORTHEAST ALABAMA
REGIONAL MEDICAL CENTER
400 East Tenth Street
Anniston, AL  36207
010078

HENRY COUNTY MEMORIAL HOSPITAL
1000 North 16th Street
New Castle, IN  47362
150030

INDIANA UNIVERSITY HEALTH ARNETT, INC.
5165 McCarty Lane
Lafayette, IN  47905
150173

INDIANA UNIVERSITY HEALTH BALL
MEMORIAL HOSPITAL, INC.
2401 West University Avenue
Muncie, IN  47303
150089

INDIANA UNIVERSITY HEALTH BLOOMINGTON,
INC.
2651 East Discovery Parkway
Bloomington, IN  47408
150051

INDIANA UNIVERSITY HEALTH NORTH
HOSPITAL, INC.
11700 North Meridian Street
Carmel, IN  46032
150161

INDIANA UNIVERSITY HEALTH WEST
HOSPITAL, INC.
1111 North Ronald Reagan Parkway
Avon, IN  46123
150158

INDIANA UNIVERSITY HEALTH, INC. d/b/a IU
HEALTH METHODIST UNIVERSITY
1701 North Senate Blvd
Indianapolis, IN  46202
150056

INTERMOUNTAIN FRONT RANGE, INC. d/b/a
LUTHERAN HOSPITAL
12911 West 40th Avenue
Wheat Ridge, CO  80033
060009

JAMAICA HOSPITAL
8900 Vanwyck Expressway
Jamaica, NY  11418
330014

6

MARION GENERAL HOSPITAL
441 North Wabash Avenue
Marion, IN  46952
150011

MCHS HOSPITALS, INC. d/b/a MARSHFIELD
MEDICAL CENTER – WESTON
3400 Ministry Parkway
Weston, WI  54476
520202

MCLAREN LAPEER REGION
1375 North Main Street
Lapeer, MI  48446
230193

MCLAREN MACOMB HOSPITAL
1000 Harrington Boulevard
Mount Clemens, MI  48043
230227

MEMORIAL HOSPITAL OF SOUTH BEND
615 North Michigan Street
South Bend, IN  46601
150058

MIAMI VALLEY HOSPITAL
One Wyoming Street
Dayton, OH  45409
360051

MUNSTER MEDICAL RESEARCH FOUND., INC.
d/b/a COMMUNITY HOSPITAL
901 MacArthur Boulevard
Munster, IN  46321
150125

OHIO STATE UNIVERSITY HOSPITALS
410 West Tenth Avenue
Columbus, OH  43210
360085

OSF HEALTHCARE SYSTEM d/b/a OSF SACRED
HEART MEDICAL CENTER
812 North Logan Avenue
Danville, IL  61832
140093

PARKVIEW HOSPITAL, INC.
11109 Parkview Plaza Drive
Fort Wayne, IN  46845
150021

PEACEHEALTH SACRED HEART-RIVERBEND
3333 Riverbend Drive
Springfield, OR  97477
380102

PEACEHEALTH SOUTHWEST MEDICAL CENTER
400 Northeast Mother Joseph Place
Vancouver, WA  98664
500050

PRESENCE CENTRAL AND SUBURBAN
HOSPITALS NETWORK d/b/a PRESENCE MERCY
MEDICAL CENTER
1325 North Highland Avenue
Aurora, IL  60506
140174

PRESENCE CENTRAL AND SUBURBAN
HOSPITALS NETWORK d/b/a PRESENCE SAINTS
MARY AND ELIZABETH MEDICAL CENTER
2233 West Division Street
Chicago, IL  60622
140180

PRESENCE CENTRAL AND SUBURBAN
HOSPITALS NETWORK d/b/a PRESENCE ST.
JOSEPH HOSPITAL-ELGIN
77 North Airlite Street
Elgin, IL  60123
140217

PRESENCE CENTRAL AND SUBURBAN
HOSPITALS NETWORK d/b/a PRESENCE ST.
JOSEPH MEDICAL CENTER
333 North Madison Street
Joliet, IL  60435
140007

PRESENCE CENTRAL AND SUBURBAN
HOSPITALS NETWORK d/b/a ST. MARY'S HOSP.
500 West Court Street
Kankakee, IL  60901
140155

PRESENCE CHICAGO HOSPITALS NETWORK
d/b/a ST. JOSEPH HOSPITAL-CHICAGO
2900 North Lake Shore Drive
Chicago, IL  60657
140224

PRESENCE CHICAGO HOSPITALS NETWORK
d/b/a RESURRECTION MEDICAL CENTER
7435 West Talcott Avenue
Chicago, IL  60631
140117

PRESENCE CHICAGO HOSPITALS NETWORK
d/b/a ST. FRANCIS HOSPITAL
355 Ridge Avenue
Evanston, IL  60202
140080

PROVIDENCE HOSPITAL
6801 Airport Boulevard
Mobile, AL  36685
010090

SCL HEALTH MONTANA d/b/a ST. VINCENT
HEALTHCARE
1233 North 30th Street
Billings, MT  59101
270049

ST MARY MEDICAL CENTER, INC.
1500 South Lake Park Avenue
Hobart, IN  46342
150034

ST. ELIZABETH MEDICAL CENTER, INC. d/b/a ST
ELIZABETH FLORENCE
4900 Houston Road
Florence, KY  41042
180045

ST. ELIZABETH MEDICAL CENTER, INC. d/b/a ST.
ELIZABETH EDGEWOOD
1 Medical Village Drive
Edgewood, KY  41017
180035

ST. ELIZABETH MEDICAL CENTER, INC. d/b/a ST.
ELIZABETH FT. THOMAS
85 North Grand Avenue
Fort Thomas, KY  41075
180001

ST. JOHN MEDICAL CENTER, INC.
1923 South Utica Avenue
Tulsa, OK  74104
370114

ST. JOSEPH HOSPITAL & HEALTH CENTER, INC.
d/b/a ASCENSION ST. VINCENT KOKOMO
1907 West Sycamore Street
Kokomo, IN  46901
150010

ST. MARY'S HEALTH, INC. d/b/a ASCENSION ST.
VINCENT EVANSVILLE
3700 Washington Avenue
Evansville, IN  47750
150100

ST. VINCENT ANDERSON REGIONAL HOSPITAL,
INC. d/b/a ASCENSION ST. VINCENT ANDERSON
2015 Jackson Street
Anderson, IN  46016
150088

ST. VINCENT CARMEL HOSPITAL, INC.
13500 North Meridian
Carmel, IN  46032
150157

4929-4851-2812v2

ST. VINCENT FISHERS HOSPITAL, INC.
13861 Olio Road
Fishers, IN  46037
150181

ST. VINCENT HOSPITAL & HEALTH CARE
CENTER, INC. d/b/a ASCENSION ST. VINCENT
HOSPITAL – INDIANAPOLIS
2001 West 86th Street
Indianapolis, IN  46260
150084

ST. VINCENT'S BIRMINGHAM
810 Saint Vincent's Drive
Birmingham, AL  35205
010056

ST. VINCENTS MEDICAL CENTER, INC. d/b/a
ASCENSION ST. VINCENT'S RIVERSIDE HOSP.
1 Shircliff Way
Jacksonville, FL  32204
100040

ST. VINCENT'S ST. CLAIR, LLC
7063 Veterans Parkway
Pell City, AL  35125
010130

STATE UNIVERSITY OF IOWA d/b/a UNIVERSITY
OF IOWA HOSPITALS & CLINICS
200 Hawkins Drive
Iowa City, IA  52242
160058

TRUMAN MEDICAL CENTER, INC. d/b/a
UNIVERSITY HEALTH LAKEWOOD MEDICAL
CENTER
7900 Lee's Summit Road
Kansas City, MO  64139
260102

TRUMAN MEDICAL CENTER, INC. d/b/a
UNIVERSITY HEALTH TRUMAN MED. CTR.
2301 Holmes Street
Kansas City, MO  64108
260048

UNION HOSPITAL, INC.
1606 North Seventh Street
Terre Haute, IN  47804
150023

UNIVERSITY OF WISCONSIN HOSPITALS AND
CLINICS AUTHORITY
600 Highland Avenue
Madison, WI  53792
520098

UPPER VALLEY MEDICAL CENTER
3130 North County Road 25-A
Troy, OH  45373
360174

VIRGINIA HOSPITAL CENTER ARLINGTON
HEALTH SYSTEM d/b/a VHC HEALTH
1701 North George Mason Drive
Arlington, VA  22205
490050

WEIRTON MEDICAL CENTER, INC.
601 Colliers Way
Weirton, WV  26062
510023

WHITE COUNTY MEDICAL CENTER
3214 East Race Avenue
Searcy, AR  72143
040014

   Plaintiffs,

   v.

ROBERT F. KENNEDY, JR., Secretary,
U.S. Department of Health and Human Services
Room 700-E
200 Independence Avenue, S.W.
Washington, D.C. 20201

   Defendant.

## COMPLAINT FOR JUDICIAL REVIEW,
## DECLARATORY JUDGMENT, AND MANDAMUS RELIEF

1.      The above-captioned 93 Plaintiff hospitals (hereinafter "Plaintiffs"), by and through their undersigned counsel, bring this action against Defendant, Robert F. Kennedy, Jr., in his official capacity as the Secretary ("Secretary") of the United States Department of Health and Human Services ("HHS"), and state as follows:

### NATURE OF ACTION

2.      This is an action for judicial review, pursuant to 42 U.S.C. § 1395oo(f)(1), of a final decision of the Secretary finding that the Provider Reimbursement Review Board ("PRRB" or "Board") is without authority to review the Plaintiffs' challenges to the calculation of their Medicare disproportionate share hospital ("DSH") adjustments for the services they furnished to low-income patients in fiscal years 2016 through 2019. The final administrative decision in response to the Plaintiffs' request for expedited judicial review ("EJR Determination") is attached hereto as **Exhibit 1** and is incorporated herein by reference. The EJR Determination acknowledged the Plaintiffs' right to seek judicial review in this matter.

3.      The Plaintiffs assert that their DSH reimbursement calculations were understated due to the failure of the Centers for Medicare and Medicaid Services ("CMS") and the relevant Medicare Administrative Contractors ("MAC" or "contractor") to include in the numerator of the Medicare fraction of the Medicare DSH calculation all patient days for patients who were eligible for and enrolled in the SSI program but who may not have received an SSI payment for the month in which they received services (hereinafter "SSI Enrollees"),  as required by 42 U.S.C. § 1395ww(d)(5)(F) (the "DSH statute").

4.      In enacting the DSH statute, Congress intended the Medicare DSH payment to compensate hospitals, like the Plaintiffs in the instant case, that shoulder the financial burden of

providing care to a disproportionate number of low-income patients. It is based on a proxy measure for a hospital's low-income patient utilization which is the sum of two fractions expressed as a percentage. *See* 42 U.S.C. § 1395ww(d)(5)(F)(vi); 42 C.F.R. § 412.106(b).

5.      The U.S. Supreme Court in *Becerra v. Empire Health Foundation*, 142 S. Ct. 2354 (2022) upheld the Secretary's contention that a hospital patient is "entitled" to Medicare Part A benefits, and thus should be included in the Medicare fraction denominator, so long as she meets the basic Part A program eligibility criteria and regardless of whether Medicare covers or pays for her hospitalization.

6.      Similarly, the Secretary insists that a Medicare beneficiary enrolled in a Part C plan nonetheless remains "entitled" to Part A benefits, and therefore should be counted in the Medicare fraction denominator. See, Treatment of Part C Days in the Calculation of a Hospital's Medicare Disproportionate Patient Percentage, Final Action, 88 Fed. Reg. 37772 (June 9, 2023). However, according to the Secretary, SSI Enrollees are "entitled" to SSI benefits (and thus included in the Medicare fraction numerator), only if  she actually receives an SSI payment from the Social Security Administration ("SSA") for the month of her hospitalization.   See *id*. at 37779 (reaffirming the Secretary's policy of counting the patient days included in the numerator of the Medicare fractions (hereinafter "SSI Days") to exclude SSI Enrollees that did not receive an SSI payment for the month of hospitalization).

7.      As explained below, the Secretary's dissimilar construction of the terms "entitled" in the DSH statute violates the Medicare Act because it contravenes the statute's plain meaning and intent. The U.S. Supreme Court is currently reviewing this issue in *Advocate Christ Medical Center v. Becerra*, No. 23-715, *on appeal from* 80 F. 4th 346 (D.C. Cir. 2023).

8.     As a result of the Secretary's erroneous construction of the statute which undercounts SSI Days, the Plaintiffs have been denied Medicare DSH payments to which they are lawfully entitled. The Plaintiffs therefore seek declaratory and injunctive relief against the Secretary, and an order setting aside the MACs' invalid payment determinations and directing the recalculation of the Plaintiffs' DSH adjustments in accordance with the plain meaning of the statute.

## JURISDICTION AND VENUE

9.     This case arises under Title XVIII of the Social Security Act, as amended, 42 U.S.C. § 1395, *et seq*. (the "Medicare Act"); the Administrative Procedure Act, 5 U.S.C. § 551, *et seq*.; and the Declaratory Judgment Act, 28 U.S.C. § 2201, to obtain judicial review of actions of the Secretary and his agents, the Medicare Administrative Contractors ("MACs"), which resulted in the Plaintiffs receiving reduced Medicare reimbursement for their fiscal years at issue.

10.     Jurisdiction is proper under 42 U.S.C. § 1395oo(f)(1) and 28 U.S.C. § 1331.

11.     Jurisdiction also lies pursuant to 28 U.S.C. § 1361 because the Plaintiffs are entitled to a writ of mandamus requiring the Secretary to ensure that the Plaintiffs' DSH adjustments are calculated in accordance with the law from the best available data and to produce the same to the Plaintiffs for review.

12.     Venue is proper in this judicial district pursuant to 42 U.S.C. § 1395oo(f)(1) and 28 U.S.C. § 1391(e).

## PARTIES

13.     During the cost reporting periods at issue herein, all Plaintiffs were participating providers of hospital services under the federal Medicare program pursuant to Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq.* The 93 Plaintiffs are identified in Appendix A (in the  "schedules of providers") to the EJR Determination the Board issued in this matter (attached

15

hereto as **Exhibit 1**), which pertains to 21 PRRB appeals. The EJR Determination and the schedules of providers enumerate every claim the Plaintiffs appealed to the PRRB as part of a group, and all Plaintiffs are therein identified by their Medicare provider numbers, names and applicable fiscal years subject to this appeal.

14.    At all times relevant to these proceedings, all Plaintiffs had a Medicare provider agreement with the Secretary, and each was eligible to participate in the Medicare program.  At all times relevant hereto, each Plaintiff was an acute-care, inpatient hospital that served a disproportionate share of low-income patients.

15.    The Defendant is Robert F. Kennedy, Jr., in his official capacity as Secretary of the United States Department of Health and Human Services ("HHS"), the federal agency that administers the Medicare program.  References to the Secretary herein are meant to refer to him, to his subordinates and agents, and to his official predecessors or successor as the context requires.

16.    The Centers for Medicare and Medicaid Services ("CMS") is a component of HHS with responsibility for day-to-day operation and administration of the Medicare program.  CMS was formerly known as the Health Care Financing Administration. References to the Secretary and CMS herein are meant to refer to the agency and its agents and predecessors.

### THE MEDICARE PROGRAM

17.    Medicare is a federal program that provides health insurance for the aged, disabled and certain individuals with end-stage renal disease. 42 U.S.C. § 1395, *et seq*. The Medicare program is federally funded and is administered by the Secretary through CMS and its contractors, the MACs. 42 U.S.C. §§ 1395kk and 1395kk-1.

18.    The Medicare Act is composed of five parts.  *See* 42 U.S.C. § 1395, *et seq*. Part A of the Medicare Act covers "inpatient hospital services."  *See* 42 U.S.C. §§ 426(c), 1395c, *et seq*. The Medicare Part A benefit consists of the right to have Medicare payment made on a

beneficiary's behalf for a limited number of days of inpatient hospital care during a spell of illness. *See* 42 U.S.C. §§ 426(a), 1395d(a)(1). Specifically, the Part A benefit entitles an individual to have payment made on his or her behalf for up to 90 days of inpatient hospital services in a spell of illness, with a lifetime reserve of 60 additional days that a beneficiary may elect to use. 42 U.S.C. § 1395d(a)(1); 42 C.F.R. § 409.61(a).

19.    Part B is an optional program that covers physician services and certain other outpatient medical services that are not covered under Part A, if a premium is paid. *See* 42 U.S.C. §§ 1395j—1395w-6.

20.    Part C, known at different times as the Medicare+Choice and Medicare Advantage Program, allows participants to elect coverage under approved commercial health insurance plans as an alternative to Medicare's traditional fee-for-service model available under Parts A and B.  42 U.S.C. § 1395w-21(a).

21.    Part D, known as the Medicare Prescription Drug Benefit Program, was enacted as part of the Medicare Modernization Act of 2003 ("MMA"), Pub. L. No. 108-173, 117 Stat. 2066, which was signed into law on December 8, 2003. As relevant here, Medicare Part D provides, *inter alia*, fully subsidized drug benefits for SSI Enrollees. 42 U.S.C. §§ 1395w-101, 1395w-114; 42 C.F.R. § 423.773, 20 C.F.R. § 418.3105. Part D coverage first began on January 1, 2006.  42 U.S.C. § 1395w-101(a)(2).

22.    Part E sets forth various miscellaneous provisions, including the Medicare Secondary Payer ("MSP") requirements for coordinating benefits and the Prospective Payment System ("PPS") for reimbursing Part A inpatient hospital services, and its DSH statute at issue in this case. 42 U.S.C. § 1395x, *et seq*.

**MEDICARE DSH PAYMENT**

23.     Since 1983, the Medicare program has paid most hospitals under a prospective payment system ("PPS") for inpatient hospital services furnished to an individual who is entitled to benefits under Medicare Part A.  42 U.S.C. §§ 1395ww(d)(1)-(5); 42 C.F.R. Part 412.

24.     Under the inpatient PPS ("IPPS"), hospitals are reimbursed for providing inpatient services to Medicare beneficiaries at a predetermined rate based on the diagnosis-related grouping ("DRG") to which a patient is assigned.  Each DRG represents the average resources that are required to provide the inpatient services described by the particular DRG category relative to the national per case average for inpatient hospital services.  42 U.S.C. § 1395ww(d)(4) & (5).

25.     Medicare pays these predetermined, standardized amounts per hospital discharge, subject to certain upward payment adjustments for certain qualifying hospitals.  *Id.*

26.     The IPPS standard rate is based on a national average amount of operating costs incurred to treat a Medicare patient with the assigned DRG.  *See id.*  The payment per discharge is subject to further adjustments to account for additional hospital-specific factors that may cause a hospital to incur greater than average operating costs to treat each Medicare Part A patient.  *See* 42 U.S.C. § 1395ww(d)(5).

27.     One of the IPPS payment adjustments is the DSH payment. 42 U.S.C. § 1395ww(d)(5)(F); 42 C.F.R. § 412.106.  A hospital that serves a disproportionate share of low-income patients is entitled to an upward percentage adjustment to the standard payment rate per discharge under the IPPS.  *Id*.

28.     The DSH adjustment is a percentage add-on to the standard payment rate per hospital discharge under the Part A prospective payment system.  It is intended to compensate a hospital for the higher-than-average costs of treating low-income Medicare beneficiaries whose care is paid under the IPPS.  *See* H.R. Rep. No. 99-241, at 15 (1985), *reprinted in* 1986

18

U.S.C.C.A.N. 579, 593-94.  When it created the DSH adjustment, Congress identified two reasons why hospitals treating a disproportionate share of low-income patients have higher-than-average costs: first, that low-income Medicare patients are more costly than average to treat, and second, hospitals that treat a large proportion of low-income patients overall tend to incur higher costs per case for all patients, due in part to the specialized services they provide and other structural characteristics of these hospitals.  *Id.*

## THE DSH PAYMENT CALCULATION

29.    Calculation of the DSH Payment add-on turns on a hospital's "disproportionate patient percentage" ("DPP"), which is the sum of two fractions expressed as percentages. *See* 42 U.S.C. § 1395ww(d)(5)(F)(vi); 42 C.F.R. §§ 412.106 (b)-(d).

30.    Generally, the greater the two percentages, the greater a hospital's DSH payment.

31.    One of the two fractions used to calculate a hospital's DSH payment is commonly called the "Medicare fraction."  The statute defines the Medicare fraction as:

> the fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were *entitled to benefits under [P]art A of [Title XVIII]* and were *entitled to supplementary security income benefits* (excluding any State supplementation) under subchapter XVI of this chapter ["**SSI Days**"], and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were *entitled to benefits under [P]art A of [Title XVIII.]*

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I) (emphasis added). As the italicized language indicates, the Medicare fraction consists solely of days for patients who were "entitled to benefits under Part A" of Medicare and/or "entitled to [SSI] benefits."  *Id.*  The denominator includes all patient days for which patients were "entitled to" Part A benefits; whereas the numerator includes only those Part A days for patients who were also "entitled to" supplemental security income benefits under Title XVI for the month in which they were hospitalized.

32.     The second of the two fractions used to compute a hospital's DSH payment is referred to as the "Medicaid fraction." The statute defines the Medicaid fraction as:

> the fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consists of patients who (for such days) were *eligible for medical assistance under a State plan approved under [Title XIX]*, but who were *not entitled to benefits under [P]art A of [Title XVIII]*, and the denominator of which is the total number of the hospital's patient days for such period. [1]

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (emphasis added). As emphasized above, the numerator of the Medicaid fraction consists of days for patients who both were eligible for medical assistance under Title XIX, or Medicaid, and were "not entitled to benefits under [Medicare P]art A" for their "patient days" in the hospital.

33.     The SSI program is a federal program administered by the SSA under Title XVI, which provides benefits to low-income individuals who are either aged 65 or older, or are blind or disabled. The SSI program provides a sliding-scale cash stipend to SSI Enrollees who meet certain income and resource thresholds in a particular month, as well as non-cash benefits. For example, the SSI program provides vocational rehabilitation services for disabled SSI Enrollees, continued Medicaid eligibility for SSI Enrollees who exceed the income and resource thresholds for a monthly cash stipend, as well as automatic eligibility for a full subsidy to cover the cost of Medicare Part D prescription drug benefits through the Extra Help program. *See* 42 U.S.C. § 1381, *et seq.*; 42 U.S.C. § 1395w-114; 42 C.F.R. § 423.773 and 20 C.F.R. § 418.3105; *see also* CMS Manual 100-18, Chapter 13, Premium and Cost-Sharing Subsidies for Low-Income Individuals, at §§ 40.2.2, 40.2.5, 70.5.2.

---

[1] This statute refers to "this subchapter," which means subchapter XVIII of Chapter 7 of Title 42 of the United States Code, also known as Title XVIII of the Social Security Act.

34.     To implement the DSH legislation, CMS determines the number of SSI Days for those patients entitled to both Medicare Part A and SSI by matching data from the Medicare Provider Analysis and Review ("MedPAR") file, which is Medicare's database of Provider inpatients, and the Medicare Enrollment Database (EDB), with a file created for CMS by SSA to identify SSI-"entitled" individuals.  75 Fed. Reg. 50,041, 50,277-81 (Aug. 16, 2010).

35.     The MACs are private insurance companies that perform certain Medicare audit and payment functions under contracts with CMS. As is relevant here, the MACs determine payment amounts due the hospitals under Medicare law and regulations. 42 U.S.C. § 1395h, 42 C.F.R. § 413.20. The MACs review the cost report, determine the total amount of Medicare reimbursement due the provider and issue the provider a Notice of Program Reimbursement ("NPR").  *See* 42 C.F.R. § 405.1803.

36.     A provider dissatisfied with the MAC's final determination of total reimbursement may file an appeal with the Board within 180 days of the issuance of the NPR (or a revised NPR ("RNPR")).  42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835.

37.     The Board is required to apply all statutes, regulations, and orders applicable to the Medicare program. 42 U.S.C § 1395oo.  When a provider challenges the validity of a statute, regulation, or order through a jurisdictionally proper appeal, the Board is required to grant expedited judicial review ("EJR") of the matter, permitting the provider to raise their claims in federal court without the need for an administrative hearing.  42 U.S.C. § 1395oo(f)(1).

## SECRETARY'S CONSTRUCTION OF THE DSH STATUTE

38.     The composition of the numerator and denominator of both the Medicare and Medicaid fractions is determined by the meaning and intent of the terms "entitled" and "eligible" in the DSH statute.

39.     Over the last three decades, the Secretary has vacillated in his approach to construing the DSH statute, resulting in a litany of litigation and agency policy changes.

40.     Due to the significant impact of the meaning ascribed to the terms "entitled" and "eligible" in the DSH statute, the Secretary's construction of their meaning and their application to Plaintiffs' program reimbursement has been repeatedly challenged.

41.     On review, federal courts have effectively concluded that Congress used the terms "entitled" and "eligible" interchangeably and without meaningful distinction. *See Northeast Hosp. Corp. v. Sebelius*, 657 F.3d 1, 12-13 (D.C. Cir. 2011) (noting that "the usual rule that Congress intends different meanings when it uses different words has little weight here …. [I]t would be a mistake to read too much into the difference in nomenclature") (collecting cases).

42.     Prior to October 1, 2004, the Secretary construed the term "entitled" in the DSH statute to mean that a patient was "entitled to benefits under Part A" of Medicare when Medicare Part A covered and paid for the patient's hospitalization. For instance, if the patient's spell of illness exceeded 90 days such that his Part A benefits were exhausted, the patient was deemed not to be "entitled to" Part A Medicare benefits for purposes of the DSH calculation. *See* 42 C.F.R. § 412.106(b)(2)(1)(2003); *see also* 51 Fed. Reg. 16,772, 16,788 (May 6, 1986); 51 Fed. Reg. 31,454, 31,460-61 (Sept. 3, 1986). Thus, hospital days for which dual-eligible patients—patients eligible for both Medicare and Medicaid—had exhausted their Medicare Part A benefits were therefore excluded from the numerator and denominator of the Medicare fraction because such days were not "covered" by Medicare. In accordance with this construction, the Secretary held that days attributable to patients who had exhausted their Medicare Part A benefits should be counted in the numerator of the Medicaid fraction if the person was eligible for Medicaid. *See Presbyterian*

*Med. Ctr. of Philadelphia v. Aetna Life Ins. Co.*, CMS Adm'r Dec., 96-D75, MEDICARE & MEDICAID GUIDE (CCH) ¶45,032 (Nov. 29, 1996).

43.    In 2003, however, the Secretary proposed to change the interpretation of the DSH statute in 68 Fed. Reg. 27,154, 27,201-08 (May 19, 2003), despite the fact there had been no change in the underlying statute. In that notice of proposed rulemaking, the Secretary erroneously stated that the then-current policy required all dual-eligible days to be counted in the Medicare fraction even after a Medicare beneficiary exhausted his or her Part A benefits.

44.    The Secretary did not act upon this proposal in the final IPPS rule for federal fiscal year 2004.  68 Fed. Reg. 45,346, 45,422 (Aug. 1, 2003).

45.    A year later, however, in 2004, the Secretary reversed course and adopted what he then acknowledged was a new policy: to include Medicare Advantage (Part C) days and Medicare Exhaust days in the Medicare fraction. 69 Fed. Reg. 48,916, 49,098-99 (Aug. 11, 2004) (acknowledging that the Secretary had never before counted Part A exhaust days in the Medicare fraction and explaining the misstatement he had made in the proposed rulemaking of May 19, 2003).

46.    The Secretary effected this change by striking the word "covered" from the existing Medicare fraction regulation, reflecting a fundamental change to the construction of the term "entitled" to benefits.  *Compare* 42 C.F.R. § 412.106(b)(2)(i) (2003) *with* 42 C.F.R. § 412.106(b)(2)(i) (2005); *see also* 69 Fed. Reg. 48,916, 49,246 (Aug. 11, 2004).

47.    In the summer of 2007, without providing notice or the opportunity to comment, the Secretary issued a technical correction to the regulation regarding CMS' policy on Medicare Advantage days. Specifically, the Secretary amended the DSH regulation to conform the text to effectuate the "policy change" announced in the 2004 rulemaking, 72 Fed. Reg. 47,130, 47,384

(Aug. 22, 2007), to provide that the Medicare fraction included all patient days for "patients entitled to Medicare Part A (or Medicare Advantage (Part C))." 42 C.F.R. §§ 412.106(b)(2)(i)(B) and (iii)(B). The stated effective date for the 2007 rule was October 1, 2007.  72 Fed. Reg. at 47,130.

48.    As with Medicare Advantage days, the Secretary's 2003 and 2004 rules did not expressly address the Agency's treatment of days attributable to Medicare Part A beneficiaries whose Part A benefits were subject to Medicare Secondary Payer limitations, *i.e.*, whose healthcare services are not paid by Medicare because Medicare is secondary to a group health insurer or a third-party payer.  However, in its final IPPS rule for Fiscal Year 2006, the Agency noted it had "updated . . . [42 C.F.R.] § 412.106(b) to reflect the inclusion [in the Medicare Part A fraction] of days for which Medicare was not the primary payer."  70 Fed. Reg. 47,287, 47,441 (Aug. 12, 2005).

49.    None of these amendments discussed the broader impact of changing definition of "entitled" *vis a vis* SSI Enrollees.

50.    In 2008, this Court issued its memorandum opinion and order in *Baystate Medical Center v. Leavitt,* 545 F. Supp. 2d 20, *amended by* 587 F. Supp. 2d 37 (D.D.C. 2008), which required the Secretary to correct several systemic errors in his calculation of the Medicare fraction that uniformly deflated the numerator of the fraction (SSI Days), and inflated the denominator, thus reducing the fraction overall and, as a result, reducing the DSH payments made to hospitals.

51.    In April 2010, without advance notice to the public and without affording hospitals an opportunity for comment, the Secretary issued CMS Ruling 1498-R, which: (1) directed the Board to remand to the MACs all pending DSH appeals that raised issues similar to those in *Baystate*; (2) directed CMS to re-compute and publish hospitals' updated Medicare fractions using

the revised SSI-data matching process mandated in *Baystate*; and (3) directed the MACs to use the newly published Medicare fractions to settle all remanded cost reporting periods, including those preceding the October 1, 2004 effective date of the amendment.  *See* CMS Ruling No. CMS-1498-R (April 28, 2010).

52.    One month later, on May 4, 2010, the Secretary announced yet another proposed amendment to the DSH regulation to obviate any confusion made by the prior changes. "In order to further clarify our policy that patient days associated with [Medicare Advantage Plan] beneficiaries are to be included in the [Medicare] fraction because they are still entitled to benefits under Medicare Part A, we are proposing to replace the word 'or' with the word 'including' in [42 C.F.R.] § 412.106(b)(2)(i)(B) and § 412.106(b)(2)(iii)(B)." *See* 75 Fed. Reg. 24,000, 24,006-07.

53.    The amendment to the regulation was adopted in the 2011 IPPS Final Rule dated August 16, 2010, without modification, *see* 75 Fed. Reg. 50,275, 50,286 (Aug. 16, 2010), resulting in multiple challenges to the amendment and its retroactive application. *See, e.g., Catholic Health Initiatives—Iowa Corp v. Sebelius*, 841 F. Supp. 2d 270 (D.D.C. 2012), *rev'd*, 718 F.3d 914 (D.C. Cir. 2014); *Metropolitan Hosp. v. United States Dep't of Health & Human Servs.*, 702 F. Supp. 2d 808 (W.D. Mich. 2010), *rev'd*, 712 F.3d 248 (6th Cir. 2013).

54.    Ultimately, the courts upheld the Secretary's new, expansive interpretation of the term "entitled" in the phrase "entitled to benefits under [P]art A" as meaning the patient met the "qualifying Medicare statutory criteria."  *See, e.g., Catholic Health*, 718 F.3d at 919–20; and *Becerra v. Empire Health Foundation*, 142 S. Ct. 2354 (2022) (reversing the Ninth Circuit's contrary holding, and finding the plain language of the statute compelled the agency's interpretation as to Part A beneficiaries' noncovered days).

25

55.     Despite the Secretary's wholesale expansion of the meaning of "entitled to benefits under Medicare [P]art A" to include covered and non-covered inpatient days, the Secretary continues to construe the term "entitled to [SSI] benefits" narrowly, to require a cash stipend paid by SSA for the month of hospitalization. The Secretary has continued to exclude from its count of SSI Days those SSI Enrollees who did not receive the stipend for the month of their inpatient hospitalizations. 75 Fed. Reg. 50,275-286 (Aug. 16, 2010); *see Metropolitan Hosp.*, 712 F.3d at 263–65.

56.     The Secretary construes two uses of the term "entitled" that appear in the same sentence of the Medicare fraction of the DSH statute differently, in contravention of well-established statutory principles. *See Sorenson v. Secretary of Treasury*, 475 U.S. 851, 860 (1986) (identical words in same statute have same meaning).

57.     The Secretary takes the view that patients for whom Medicare Part A neither covers nor pays their inpatient hospitalizations are nevertheless entitled to Medicare Part A if they meet the qualifying statutory criteria for and are enrolled in the Medicare program.

58.     At the same time, the Secretary maintains that SSI Enrollees, that is, patients who qualify for and are enrolled in the SSI program, are not entitled to SSI benefits absent their receipt of a cash payment from the SSA for the month in which they are hospitalized, even when the SSI Enrollee should have received a cash payment but did not for various administrative reasons.

59.     Under the SSI statute, however, every aged, blind or disabled individual whose income and resources meet the annual statutory criteria are SSI-qualified and entitled to SSI program benefits "in accordance with and subject to the provisions of" Title XVI, including the program's various and detailed payment-eligibility provisions. *See* 42 U.S.C. §§ 1381a & 1382.

60.    To further support beneficiaries under age 65 who want to work, SSI has always included a vocational rehabilitation program under title XVI. *See* 42 U.S.C. § 1382d. Vocational rehabilitation services include physical rehabilitation, assistive technology, vocational training, and a variety of other "goods and services" that assist with employment. *See* 20 C.F.R. § 416.2214(b).  Blind or disabled SSI beneficiaries remain eligible for vocational-rehabilitation services even when monthly cash payments under §§ 1382 and 1382h(a) are suspended. *Id*. § 1382d(e)(2); *see also* 20 C.F.R. §§ 411.155, 416.2215. Moreover, participation in vocational rehabilitation may extend access to certain cash benefits that otherwise would be suspended or terminated. 42 U.S.C. § 1383(a)(6).

61.    Another non-cash benefit for SSI enrollees in the 42 states where the income and resource thresholds for SSI and Medicaid program participation are the same, is continued Medicaid eligibility for periods when the beneficiary is participating in vocational rehabilitation training and earns monthly income above the payment-eligibility threshold. 42 U.S.C. § 1382h. Even when that beneficiary no longer qualifies for a monthly SSI stipend for a month, the beneficiary does not lose Medicaid coverage for that month.

62.    Another benefit of SSI enrollment for Medicare beneficiaries is fully subsidized Medicare Part D prescription drug benefits, irrespective of whether that SSI Enrollee receives a monthly cash stipend from SSA.  *See* 42 C.F.R. § 423.773 and 20 C.F.R. § 418.3105.  Because SSI Days include only patients who participate in both the SSI and Medicare programs for purposes of the DSH statute, the Part D benefit applies to all SSI Enrollees at issue in this appeal.

63.    The Secretary considers an SSA award letter to be sufficient evidence of the Medicare beneficiary's SSI entitlement to qualify that SSI Enrollee for a full Medicare Part D prescription drug benefit subsidy. Centers for Medicare and Medicaid Services, Find Your Level

of Extra Help (Part D), https://www.medicare.gov/your-medicare-costs/help-paying-costs/extra-help/level-of-extra-help.html; CMS Manual 100-18, Chapter 13, Premium and Cost-Sharing Subsidies for Low-Income Individuals, at §§ 40.2.2, 40.2.5.

64.    Because the Secretary has interpreted the term "entitled" in the DSH statute to mean meeting the eligibility criteria for a benefits program and does not require payment or receipt of Part A program benefits for the inpatient days at issue, the Secretary must similarly count SSI Days by interpreting benefit entitlement to mean all SSI Enrollees regardless of payment or receipt of SSI program benefits for the month of hospitalization.

65.    The Secretary's directive to include only those SSI Enrollees who receive an SSI payment for the month in which they are hospitalized runs contrary to both the plain language of the DSH statute as interpreted by the Supreme Court in *Empire*,  and Congress's intent to have Medicare-entitled SSI Enrollees serve as a proxy for low-income patients.

66.    The Secretary's incorrect and improper construction of the term "entitled" to SSI benefits thwarts Congress's intent and denies the Plaintiffs the reimbursement to which they are entitled.

### FACTUAL BACKGROUND RELEVANT TO PLAINTIFFS' ADMINISTRATIVE APPEALS

67.    Any Medicare provider dissatisfied with a final determination of the Medicare program regarding the provider's PPS payments for a "cost reporting period," *i.e.*, the provider's fiscal year, may appeal that determination to the PRRB following receipt of their NPR or RNPR.

68.    Pursuant to 42 U.S.C. § 1395oo(a) and (b) and 42 C.F.R. §§ 405.1835 and 405.1837, a hospital may file an appeal to the Board individually if the amount in controversy is $10,000 or more, or may file a group appeal of an issue that is common to two or more hospitals if the aggregate amount in controversy is $50,000 or more.

28

69.    The Plaintiffs timely filed individual or group appeals with the PRRB, and argued that their DSH adjustments were understated because the Secretary categorically excluded from the SSI Days all SSI Enrollees who did not receive an SSI payment for the month in which they were hospitalized.

70.    In the EJR Determination at issue, the PRRB concluded that it lacked authority to review or mandate specific revisions to CMS' data matching process because it was constrained by CMS rulemaking under 42 C.F.R. § 405.1867. Accordingly, the Board held that it did not have the authority to reverse the MACs' adjustments. *Id.*

71.    The Board's EJR Determination was received by counsel, on behalf of the Plaintiffs, on March 18, 2025. *See* **Exhibit 1**. The Plaintiffs' administrative rights have therefore been exhausted and this matter is now ripe for judicial review.

72.    This Complaint has been timely filed within 60 days of receipt of the Board's determination, as required by 42 U.S.C. § 1395oo(f)(1).

## COUNT I

### The Secretary's Construction of the DSH Statute
### Contravenes the Statute's Plain Language

73.    Plaintiffs repeat and reallege paragraphs 1–72 as if set forth fully herein.

74.    The Medicare Act allows for judicial review of a final agency determination "pursuant to the applicable provisions under chapter 7 of title 5," of the Administrative Procedure Act ("APA"). 42 U.S.C. § 1395oo(f)(1).

75.    The APA provides that the reviewing court shall hold unlawful and set aside agency action found to be: (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law; or (E) unsupported by substantial evidence. 5 U.S.C. § 706(2).

76.     The Secretary's construction of the DSH statute since 2004 draws a baseless distinction between Medicare Part A beneficiaries and SSI Enrollees. Under the current construction of the DSH statute, the Secretary maintains, and the Supreme Court in *Empire* has confirmed, that the phrase "entitled to benefits under part A" is a term of art that broadly encompasses days for which Medicare Part A makes no payment, including Medicare Exhaust days, Medicare Secondary Payer days and Medicare Advantage Plan days.  The Supreme Court is now reviewing whether this broad interpretation of "entitlement to benefits" must apply equally to Medicare beneficiaries who are SSI Enrollees.  *Advocate Christ Medical Center, et al. v. Becerra*, No. 23-715, on appeal from 80 F. 4th 346 (D.C. Cir. 2023).

77.     Medicare Part A beneficiaries enrolled in SSI meet the qualifying statutory criteria for SSI entitlement and are eligible for the program on the basis of their income, resources, age and/or disability. *See* 42 U.S.C. §§ 1381a & 1382. Consequently, because the term "entitled" in the DSH statute has been interpreted to mean meeting the eligibility criteria for a benefits program and does not require payment of benefits from the program, the plain language requires that all SSI Enrollees be deemed entitled to SSI benefits and have their patient days counted as SSI Days.

78.     SSI Enrollees who did not receive an SSI cash payment for the month during which they were hospitalized, *i.e.*, those assigned a PSC Code other than C01, M01, or M02, remain entitled to benefits, including vocational rehabilitation, Medical Assistance and fully subsidized Medicare Part D Prescription Drug benefits, and their inpatient hospital days must be counted as SSI Days.

79.     Because the Secretary's conflicting interpretations and application of the term "entitled" contravenes the Medicare DSH statute and the clear holdings in the *Empire* decision, frustrates Congressional intent, it violates the rules of statutory interpretation under *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), and is thus "not in accordance with law" and must be set aside, and is invalid under 5 U.S.C. § 706(2).

## COUNT II

### Violation of Statutory Obligation to Produce All Data Relevant to SSI Entitlement

80.     Plaintiffs reallege and reincorporate paragraphs 1–79 above as if set forth fully herein.

81.     In addition to erroneously construing the DSH statute to systematically reduce the number of counted SSI Enrollees, the Secretary has also violated Section 951 of the Medicare Modernization Act, which requires him to provide the Plaintiffs with all information needed to calculate the DSH computation:

> Beginning not later than 1 year after the date of the enactment of this Act, **the Secretary shall arrange to furnish** to subsection (d) hospitals (as defined in section 1886(d)(1)(B) of the Social Security Act, 42 U.S.C. 1395ww(d)(1)(B)) **the data necessary for such hospitals to compute the number of patient days used in computing the disproportionate patient percentage** under such section for that hospital for the current cost reporting year. Such data shall also be furnished to other hospitals which would qualify for additional payments under part A of title XVIII of the Social Security Act on the basis of such data.

MMA § 951, Pub. L. No. 108-173, 117 Stat. 2066 (Dec. 8, 2003) (emphasis added).

82.     The Secretary has access to the SSI eligibility data through SSA, including every Medicare patient's PSC Codes for all SSI Enrollees, but has refused to release these data, even after multiple Freedom of Information Act requests, based on contractual and privacy considerations. *See also* 70 Fed. Reg. 47,438–51 (Aug. 12, 2005).

83.     Plaintiffs have unsuccessfully sought to obtain relevant data from alternative sources, including CMS and SSA, to establish an approximate measure of the number of Medicare patients who are SSI Enrollees omitted from the Secretary's count of SSI Days.

84.     The Secretary must give Plaintiffs access to the SSI enrollment data that is furnished to the Secretary by the SSA.  Section 951 of the MMA required HHS to arrange by December 8, 2004 to furnish providers with the data necessary to compute the number of patient days used in calculating their DPP.

85.     The requirements of Section 951 may be satisfied only by giving providers access to the SSI enrollment files made available to the Secretary from the SSA, including each SSI Enrollee's assigned PSC code. No legal remedies exist to compel the disclosure; accordingly, the Plaintiffs may seek relief by way of a writ of mandamus.

86.     As a result of the Secretary's refusal to make the required disclosure,  Plaintiffs have been harmed by way of their reduced DPPs and resulting reduced Medicare payments. Specifically, the Plaintiffs have been deprived of the tools required to establish that the Secretary is underreporting the patient days in their low-income proxy, including SSI Days, which results in lower DSH adjustments.

87.     Plaintiffs are therefore entitled to a writ of mandamus pursuant to 5 U.S.C. § 706(1) and 28 U.S.C. § 1361 for purposes of directing the Secretary to furnish such data relating to SSI Enrollees that are excluded from the SSI Days count because they are assigned one of the other 74 PSC codes that indicate a temporary suspension of SSI payment.

88.     Plaintiffs are further entitled to a writ of mandamus directing that the Secretary recalculate their DPP to include in the Medicare fraction numerator all patient days for SSI Enrollees.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order for Declaratory Judgment:

a.      declaring invalid the Secretary's construction of the term "entitled to supplemental security income benefits" with respect to the composition of the Medicare fraction numerator;

b.      directing the Secretary to recalculate all of the Plaintiffs' Medicare fractions to count all SSI Enrollee's patient days as SSI Days in the numerator of the Medicare fraction;

c.      requiring the Secretary to pay interest on the amount due to Plaintiffs pursuant to 42 U.S.C. § 1395oo(f)(2);

d.      directing the Secretary to furnish the Plaintiffs with CMS data from the Social Security Administration to identify the PSC Codes of all SSI enrollees who were entitled to Part A and who received inpatient hospital services from the Plaintiffs during the cost report years at issue;  and

e.      providing such other relief as the Court may deem proper and just.

Dated this 14th day of April, 2025.

Respectfully Submitted,

/s/ Daniel F. Miller
Daniel F. Miller, D.C. Bar No. WI0032
Heather D. Mogden, D.C. Bar No. WI0039
Elizabeth P. Sawyer
HALL, RENDER, KILLIAN, HEATH & LYMAN, P.C.
330 East Kilbourn Avenue, Suite 1250
Milwaukee, WI  53202
Telephone:     (414) 721-0478
Facsimile:     (414) 721-0491
Email:  dmiller@hallrender.com
Email:  hmogden@hallrender.com
Email:  lsawyer@hallrender.com

*Attorneys for Plaintiffs*

4929-4851-2812v2